We'll hear argument first this morning in Case No. 14-144, John Walker v. The Texas Division of the Sons of Confederate Veterans. Mr. Keller? Thank you, Mr. Chief Justice, and may it please the Court. Messages on Texas license plates are government speech. The State of Texas etches its name onto each license plate, and Texas law gives the State sole control and final approval authority over everything that appears on a license plate. As in Summa, Texas is not abridging any traditional free speech rights. Motorists remain free to speak in all sorts of ways, including on their cars, through a bumper sticker right next to a license plate or a car-size paint job or a window decal. But the First Amendment does not mean that a motorist can compel any government to place its imprimatur on the Confederate battle flag on its license plate. Well, one of the problems with the scheme is its nebulous standard. It wouldn't be regarded as offensive to many people. I mean, is it government speech to say Mighty Fine Burgers to advertise a product? The government, yes. Yes, Justice Ginsburg. The government is allowed to choose the messages that it wishes to. And simply because it has approved parochial messages or has endorsed messages or is accepting and generating revenue to get to propagate those messages doesn't defeat the fact that it is government speech. When the Library of Congress, for instance, takes sponsorship from the Washington Post or Wells Fargo for the National Book Festival, that's still government speech when they then put it on their website. Suppose Texas erected 500 electronic billboards around the State, and on those billboards they posted some government messages, wear your seatbelt when you're driving, for example. But then at the bottom, people could put a message of their choice. Would that be government speech? Justice Alito, I think the portion that the government had final approval authority and sole control over, that would be government speech. If the government, though, doesn't have sole control or final approval authority over another portion, I think that could be a problem. Alito, the government has the same kind of approval authority that it has here. It will allow people to say inoffensive things. But if they say something that's offensive, then they won't allow that. That would be government speech? It would be government speech under, I think, the best reading of both Sumum and Johans together as precedent, that you have final approval authority and the government isn't abridging other traditional free speech rights. But even if that weren't Texas. Sotomayor But I'm sorry, I don't understand. Almost anything the government does, it has final authority to veto. I mean, whether it's a school or a government website, it always retains the authority to say no. The issue is, when can it say no constitutionally? So I don't think it's merely that. And in Summon, the government actually created the words that were being advertised to the public. So isn't that substantially different? Because the government's not creating these words. Well, Justice Sotomayor, a few points. On Summon, the Court indicated that the That's the Monument case. I'm talking about Johanas. That's right. In Summon, though, a private organization, the Fraternal Order of Eagles, put its name on the monument. It created the message. It then donated it to the park. In Johans, yes, the government did create a program to espouse the message, beef at Sweat's for dinner. But even then, as the Court recognized, the Secretary of Agriculture didn't write ad copies. So it's not as if the government had control. I'm sorry. The government had control. It just was not at every step of the way saying this is how the message must be. But at the end of the day, it had final approval authority. But to return to Justice Alito's hypothetical and what the test should be, the test can include other elements. And even if Summon and Johans could be read as just a two-part test, for all sorts of reasons, this is government speech here. Texas has its name on every license plate. There's a formal process here of notice and comment, and the Board takes a public vote before approving any specialty license. Mr. Keller? Do you want us to hold that because it's government speech, the government can engage in viewpoint discrimination? Is that what I'm supposed to write? That's right, Justice Kennedy. And the Court has recognized that in Summon and in Johans. And does that have any limits, Mr. Keller? I mean, suppose somebody submitted a license plate to Texas that said, vote Republican, and Texas said, yes, that's fine. And then the next person submitted a license plate to Texas and it said, vote Democratic, and Texas said, no, we're not going to approve that one. What about that? Yeah, Justice Kagan, I don't think our position would necessarily allow that, but I think that doesn't have to be. Why wouldn't it allow that? Because the Establishment Clause, the Equal Protection Clause, Due Process Clause, other independent constitutional bars could apply. As Justice Kagan said. Well, this is not an Establishment Clause issue, so I'm curious as to what constitutional constraints you think there are and how they would play out as to the kind of hypothetical I just gave you. Absolutely, Justice Kagan. I think partisan speech, candidate speech, as Justice Stevens' concurrence in Summon recognized and Justice Scalia's concurrence in Finley recognized, there could be other constitutional bars, such as the Equal Protection Clause. The Oregon Supreme Court for example. I think all you have to say is whatever prevents Texas itself in all of its other activities, never mind license plates, from saying, vote Republican, right? Absolutely. I mean, you put the same question. What stops Texas from saying in all of its election literature that it passes out? Vote Republican. I think something prevents that. And whatever prevents that would prevent it on the license plates, too, no? That's correct, Justice Scalia, which is why that issue is one of government speech in general. But the Court has recognized unanimously that the government can speak, that the government speech doctrine does not allow or, sorry, that the government can speak even if it is going to take certain viewpoints and not allot it. Well, what case do you want me to read to show that the government can engage in viewpoint discrimination when it's its own speech? The monument cases? Yes, Justice Kennedy. Surmon would be the best example. Is this a case where the State, the government, has aided in creating a new kind of public forum? People don't go to parks anymore. If the government bought 17 soap boxes to put around the park, that's government property, but the government can't prohibit what kind of speech goes on there. Why isn't this a new public forum in a new era? I don't think it's a public forum for private speech for various reasons. The Court has never recognized a public forum for private speech when the government places its name on the message, when it completely controls the message in the forum, when it is receiving notice and comment from the public. No, but that's circular. The whole question is whether you can control the message. You're assuming the answer to the question. Well, Justice Kennedy, I think the Court has looked at governmental intent to determine whether there's a public forum for private speech. And for all of the reasons that we're pointing out, that this is government speech, it is the same, it is the flip side of why a public forum hasn't been created. So. I'm not quite sure why it's government speech, since it's, there's no clear identifiable policy, at least it's arguable there's none, that the State is articulating. I mean, they're only doing this to get the money. Mr. Chief Justice, a singular programmatic message I don't think can be part of any administrable test for government, because government must speak in all sorts of ways. The Court in Summum indicated that the 52 structures in New York Central Park were all government speech, and yet those, it's a wide array of messages, such as Alice in Wonderland. Well, but it's here, I mean, you could have conflicting messages. I mean, what is the government policy between allowing, you know, University of Texas plates and University of Oklahoma plates? The State of Texas can absolutely promote the educational diversity of its citizens. Well, okay. What's its policy between permitting Mighty Fine Burger plates and, you know, Pretty Good Burgers plates? Mr. Chief Justice, as an Austin, Texas establishment, the State of Texas, if it wanted to, could promote that message. But even if Mighty Fine Burgers weren't a Texas establishment, Texas is allowed to endorse speech. And just because it would be generating revenue. So it's endorsing speech? It is the government's speech. The analogy would be an endorsement of such as a professional athlete. If a professional athlete, for instance, places a logo of a product or otherwise on some apparel that the athlete is wearing, that's still the speech of the athlete. Right, but the athlete doesn't advertise, you know, Nike on his jersey and Adidas on his shoes. You can see one message, that athlete is endorsing this brand. But Texas will put its name on anything, and the idea that this is their speech, again, the only thing that unifies it is they get money from it. Mr. Chief Justice, I don't think Texas would. But he would if he could. The State of Texas does not put its name on everything. It follows a formal process with a public vote. Well, it does. You told me yourself. You began, you said its name is etched on the license plate. Every message that is actually appearing on a license plate, yes, that is the State's message. How many of them are there? As of the beginning of this month, there were 438 specialty plates, 269 of which were available for general public use. How many have you disapproved other than this one? We addressed that argument in our reply brief at pages 9 to 11. Texas has the – sorry, Texas agencies have denied about a dozen plates. Some of that information is in the records, some of it is not. And in which – what other ones have you disapproved? The Board's predecessor denied a pro-life plate. The Board itself denied a Texas DPS Trooper's Foundation plate. And the Board's predecessor also denied about a dozen other plates. Also, the – All on the ground of offense? The information is not clear as to what the grounds for those denials were. The legislature itself has also repealed multiple specialty plates that it also had created. So this shows that – Could I ask, Mr. Kelley, if you go down to Texas and you just stare at license plates, are most of them just the standard license plate, and then these 400 license plates you see very rarely, or do most people actually have one of these specialty plates? Well, there's a wide range. I believe most plates are still the standard plate. But there's a very – there's a substantial percentage that are not. It's not by any means unusual to see a specialty plate. It would not be unusual to see a specialty plate in the State of Texas. But the State of Texas, by etching its name on it and keeping control of what appears on license plates, it's still the State's message. What is the limits of this argument? That's what concerns me. And your answer to my billboard question was disturbing. But suppose people still did go to parks and the State had an official State soap box at the park, and every once in a while a State official would mount the soap box and, say, give some official State announcement. But other times, people who paid a fee would be allowed to go up there and say something that they wanted, provided that it was approved in advance by the State. Would that be official State speech? Justice Alito, I think there we're starting to cross over into a situation what this Court in Summa called of a subterfuge, that if you are abridging traditional free speech rights, if you're limiting access to a traditional public forum, then that would be an instance where government speech is crowding out speech and therefore would raise constitutional differences. Kennedy, I don't think it's become traditional because Texas has always maintained control over its plates, and it has always exercised editorial control. So unlike a park which has been held since time immemorial for the benefit of the public to speak, license plates are a regulatory. You want us to say that public forum cannot evolve over time according to the State? And people don't go to parks anymore. They drive. Justice Kennedy, absolutely. The public, traditional public forum can evolve over time. But the indicia of a traditional public forum still has to be one that is open. And Texas has not opened license plates. If other States wanted to. Kagan, in a world in which you've approved 400 license plates and they're pretty common in the State of Texas and you've only disapproved a very select few, you know, it does seem as though you've basically given, relinquished your control over this and, you know, made it a people's license plate for whatever private speech people want to say. Justice Kagan, I think it would be odd to say that it's private speech when the public is taking a public vote and receiving notice and comment, a very governmental function of when the government wants to act, and then it's placing its name on the license plate. When the government is placing its name on the license plate, it is accepting and signifying that this is the government's message. And even if it's for you. Ginsburg, does it have notice and comment for every one of the 430-odd that it's approved every time there's a request? Is there a notice and comment procedure? If it's a legislature-created plate, the legislature, of course, would do it, and then there wouldn't be an agency notice and comment proceeding. But under existing law, notice and comment would be required for every specialty plate approved by the agency, which is all specialty plates that are not approved by the legislature. I think a good analog to this case would be the U.S. Postal Service's postage stamp program. There, the U.S. is placing its name directly on the medium. Thousands of stamps have been issued in the past. And yet there is also private input that is allowed onto what those postage stamps are going to look like. And just as Respondents can speak in all sorts of ways on a bumper sticker right next to a license plate or on a — in the envelope on which a stamp would appear, that doesn't mean that someone is allowed responsive speech to whatever appears on a stamp or whatever appears on a license plate. Scalia, does Texas also have specialty plates insofar as the letters or numbers of the plates are concerned? I mean, can you get a license plate that says hot stuff or something like that? Justice Scalia, we do have personalized plates in Texas. And are those censored? I mean, can you use a dirty word on those? The speech there is controlled completely by the State of Texas. Texas, and this is not in the record. Even though the individual selects hot stuff or whatever other message he wants to put. So I guess if this is not allowed, we can't allow that either. Yes, Justice Scalia. I mean, dirty words are — people are entitled to use dirty words. That's right. Justice Scalia, the courts holding in this case, I believe, would directly affect personalized plates. And when — I'm not sure your analogy to the Postal Service really works, because none of us can see the word personalized on its stamps. One of the license plates here for Remax Realty, you're not going to see that on a postal stamp. Mr. Chief Justice, it may be true that the U.S. Postal Service has not chosen to engage in that type of expression, but I don't think that defeats the fact that this is still government speech. For all of the indicia that the Court of Recognizing Summum and in Johans and even Justice Souter's dissent in Johans that wanted and was looking for government disclosure, we have that here. We have Texas's name etched onto the license plate. Also, untenable consequences could fall from an opinion recognizing that Texas has to offer responsive speech. Texas should not have to allow speech about al-Qaida or the Nazi Party simply because it offers a license plate propagating the message, fight terror. Well, there's an easy answer to that, which is they don't have to get in the business of selling space on their license plates to begin with. If you don't want to have the al-Qaida license plate, don't get into the business of allowing people to buy their, you know, the space to put on whatever they want to say. Mr. Chief Justice, I believe, though, that would be an answer to all of the government speech cases, and in Summum, for instance. The Court didn't say, well, if you don't want to accept the Summum monument, just don't allow monuments. And that's because government is allowed to select the messages that it wants to propagate and it's allowed to speak in medium that it chooses. Well, that might be because they've done that since the time of the pyramids or whatever. But they haven't had license plate messages since time immemorial, so maybe that's why they shouldn't be considered just like the monuments. Mr. Chief Justice, I don't mean to suggest that they are just like the monuments, but that it's still a fixed medium and a tangible message that is being displayed to a captive audience, as the Court recognized in Lehman. And in those situations, the government is entitled to select the messages that it wishes to propagate and that are going to be closely identified. Personally, I'd rather have the license plates than the pyramids. I don't know that we want to drive Texas to having pyramids. Justice Scalia, we also want to retain our license plates. And that shows, I think, what this case is about. The Respondents want Texas to place its stamp of approval on the Confederate battle flag through license plates. And Texas doesn't have to make that judgment. Alito, I don't want to beat a dead horse, but if what's the best distinction you can give me between what you do with license plates and billboards, a soapbox, an official State website where people can put up a message that they want subject to State approval? If we were to write an opinion that tried to draw a distinction between the license plates on one side and those other things on the other side, what would we say? Sure, Justice Alito. I think the very first thing is Texas has its name on it. I'm not sure in the billboard example. Texas has its name on all the other things, too. Sure. In this situation, we have exercised selectivity and control, as my previous answer to Justice Kagan suggested, our reply brief at pages 9 to 11 addresses that. Also, we market this program to the public, saying specifically that no one is entitled to whatever design they want. Rather, the board of the legislature has to approve it. That's the final item of the joint appendix. So this is not a situation where, out in the world, if you were to see a soapbox in a park, that you would wonder, is this the government speaking, is this not the government speaking, is the government abridging traditional free speech rights? This is a case where Texas wants to maintain and has maintained control of what it says on license plates. And Respondents, everyone remains free to speak in all sorts of ways, speeches, leafleting, TV advertisements, their own billboards. Sotomayor, I think that you've answered Justice Alito's question. In every park, you need generally a permit to do certain kinds of speech. So the government controls that permit process and tells you that it can say no. So why is that different in the situations that – it can't be merely control, is what I'm saying. It's the ability to veto. Because that would then give you the ability to veto – you could create a program in every public forum that basically controls in the same way. Justice Sotomayor, I think there's a difference. We need to be clear about what approval means. If approval means access to a forum and it's not government controlling every single word of the message, then I don't think you'd have government speech. If it's simply, you have a permit to government speech. Scalia, have we held that you can deny access to a park or to a forum on the basis of the content of the speech? Justice Scalia, content-based regulations of speech and attrition are important. Absolutely, they're wrong. And you're denying access on the basis of content, right? Right. It's a different situation entirely. Justice, that is correct. We are denying access. But, Mr. Keller, one of the concerns that that raises, and this really goes back to what Justice Kennedy said, is that outside the traditional area of streets and parks, this is a new world. There are all kinds of new expressive forums being created every day. And as those come into play, as long as the State says, hey, look, we're going to regulate everything for offense, we're going to keep anything offensive out of this expressive forum, it does create the possibility that in this new world, with all these new kinds of expressive fora, the State will have a much greater control over its citizens' speech than we've typically been comfortable with. That's right, Justice Kagan. And I think for all of those reasons, a narrow ruling in this case would possibly be a beneficial way to go. Do you know of any other expressive fora that are owned by the State, that are manufactured by the State, that have the State's name on it, as license plates do? I mean, if there are a lot of fora like that, boy, I would really worry. But I don't know of any others. Do you know of any others? No, Justice Scalia. This is a unique view. Well, what can you tell me, then, to help me, which might not help others? But I don't think these categories are absolute. I think they help, but they're not absolute. So I would ask the question, first, this isn't government speech in common English. It is the speech of the person who wants to put the message on the plate. The plate's owned by the State. The State says, we don't want certain messages to be displayed. And my question is, why? Why not? What is the interest that the State is furthering in keeping certain messages off the plate? Justice Breyer, the State's interest is selecting the messages that it wants to put in. I'm sorry if the State then you have the Republican example, the Democrats. I mean, not every interest is a justifiable interest. Some are not, and some are. That's why I ask my question. They keep some off and they let some on. What is their interest? Why? Which are the ones? I'm asking a factual question. Why have they kept off the ones they kept off while letting on the ones they left on? Justice Breyer, if they have no interest at all in making such a distinction, then I think since speeches hurt at least a little, they ought to lose. But if they have a justifiable interest, since you can put the bumper sticker next door, I think they win. And therefore, I'd like to know what their interest is. And the State of Texas' interest here is propagating messages that show the diverse backgrounds, educational backgrounds, products of Texas. Yes. No, I'm asking you to be brief. Let me assume that Texas likes each one of these interests, that they allow to be put on the license plate. They like Texas hamburger joints, and they probably would not approve a Chicago hamburger joint being on the Texas license plate. I think they like some of these messages. Others they don't particularly like. Am I right? Justice Breyer. I'd like to get my answer. I was asking you what is the interest in Texas and why does it keep off the messages it keeps off? In this particular example. No. Not just this example. There are a set of things they've kept off. Why? Justice Breyer, the — Now don't try a general rule. I think the Justice is asking you for a specific. Why would you — Justice Breyer, I'll use the example of the Texas DPS Troopers Foundation plate that was also denied. There, Texas didn't want that on its license plate because it was concerned that if a motorist were pulled over, that then the police officer would see that the driver— Go through this. Right. Look, I can think of many reasons I could make up. Maybe they want to keep controversial political messages off. I'd say they have an interest in that, in suggesting to people Texas doesn't sponsor this. I just want to know what they really are. And now you've said one. What was the one you just said? The Texas DPS Troopers Foundation plate, Justice Breyer. I'm interested in Justice Breyer's question. You're on the license plate approval board. What standard do you follow? When do you grant a request and when do you deny? What is the rule? I think that's what Justice Breyer is asking. And Texas regulations provide that the board can deny license plates for something that members of the public would find offensive, but it also says that the board can deny plates for any reason established by a rule, which is part of the disenfranchisement issue. Breyer. The reason I think they lose is because I don't see a State could come in and say we keep off a private message and we'll tell you the reason later. We can do it for any reason we want. They're your herding speech, and I don't see Texas's interest in saying we can keep it off for any reason we want, because that would be the Republican Democrat too. What's the same question, but I just think you have to have some kind of legitimate reason for keeping off the and it doesn't have to be much. It could be just a little. Well, Texas can have legitimate reasons for not allowing us to keep it off. Why don't you tell us what they are? Well, I think, though, that that would be requiring something like a formal process and they don't seem to reject it. No, it doesn't. I just want to know what they are. And, Justice Breyer, Texas does not have to associate itself with messages that it doesn't want to and finds offensive. And because Texas has given that explanation here, we know that. But many times government officials speak and they don't disclose their motives and that's perfectly okay. So that's your question. But, Justice, Texas did, and now we get full circle back to my first question. Texas didn't just say no, it said this message would be offensive to many people. So that's, if a message would be offensive to many people, that's a standard that they're applying. And I ask, isn't that too broad a discretion? No, Justice Ginsburg. The fact that we have that much discretion confirms that this is government speech. Mr. Chief Justice, if I may, I will reserve the remainder of my time. Thank you, counsel. Mr. George. Mr. Chief Justice, and may it please the Court, we're here representing the Sons of the Confederate Veterans because they wanted to have a license plate to raise money, in fact, for the State of Texas to keep up monuments, which was the purpose of their whole process in this case. And the State of Texas has gone about issuing an open invitation to everybody to submit to them public designs for license plates and to create, and thus has created a limited public forum for these license plates. In Texas, can Texas itself formally, let's say by a joint resolution of the legislature, endorse the Grand Army of the Republic and not the Sons of the Confederacy? Can Texas do that? The legislature can endorse anything it wants. So the State can, right? So can the legislature endorse Austin Hamburgers? Well, the legislature has created Confederate Heroes Day in this particular case, and the people on my side, this side of the room. What about Yankee heroes? Are they honored in Texas? They have created a holiday for people, for Juneteenth when the slaves were freed. What I don't understand is why this sticks in your craw when it's on a license plate. But you acknowledge that Texas can do all of these things, so long as it's Texas speech. The only question here is whether this is Texas's speech or not. If it is Texas's speech, all of these things can be said, can't they? Can't all of the things that are on the license plate be said? If it's Texas speech by itself and is not joint speech because the blockade This doesn't seem to me like a very significant issue. Well, if that's what you're concerned about. Well, as long as Texas says it's okay, but boy, if you put it on a license plate, that what I don't understand what the theory is. Well, the state has created a very successful money raising program in which it solicits people to come in and submit their design for their license plate. So they can, they have to submit the design, they have to put up the money to make the plate, and then the plate doesn't ever get published to anybody until the person or somebody orders it from the vehicle. Suppose the message, the applicant said we want this design and the design is a swastika. Is that speech that does the whoever is in charge of the license plate, do they have to accept that design? I don't believe the State can discriminate against the people who want to have that design. They're going to have this swastika, and suppose somebody else says I want to have jihad on my license plate, that's okay, too? Began? Jihad. Jihad. Jihad on the license plate can be, there is obviously a court of appeal, a district court from Ohio in which infidels was held to be state court of appeals. What is your answer in this case as to Justice Ginsburg's hypothetical, yes or no? Must the State put those symbols or messages on the plates at the request of the citizen, yes or no? Yes. How about make pot legal? Say yes. Make pot legal. Yes. That's okay? And bang it for Jesus. Yes. So you're really arguing for the abolition of Texas specialty plates, aren't you? I am arguing that if the State could make a better argument in that direction than what you've been doing. We had gotten along without it a long time before we got it, and we can get along without it. So in a way, your argument curtails speech. Only if you prevail, you are going to prevent a lot of Texans from conveying a message. You have to agree with that. I would, if the State continues to use the same standard, which is it might offend anybody, the State can deny the plate. If that's the standard, then the — and they exercise their discretion on the statutory standard that it might offend somebody. You have no alternate standard in order to have a proper solution that seems wise for Justice Ginsburg's hypotheticals. You have no standard. The answer to having a standard that controls people's speech is that the standard has to be pretty low-hanging fruit. As in the Christian Law Students Association College of Hastings v. Martinez, Justice Alito and the dissent from — the dissenters in that case said that offensive speech is something that — speech that we hate is something that we should be proud of protecting. Breyer. That's in that context. So you — but I'm trying — you say they can or they cannot have a standard which says we're trying to keep offensive speech off the license plate. As long as the definition of offensive is in the eyes of the beholder, of course they can. They can do that. They can't have that. They can or they cannot. And not. Okay. So, now, I see what you're saying, but if I were to go back to sort of the basic underlying thought here, is speech heard? Yes. The answer is yes, it is. The private speech is somewhat heard. A lot? Well, put up a bumper sticker. You can't say a lot. How is it heard? You don't get the official imprimatur. Hmm. Okay. Now, is there something to be said for Texas? Yes. What they're trying to do is to prevent their official imprimatur from being given to speech that offends people. People don't like it? Put up a bumper sticker. All right? Now, we have two interests in opposite directions. In many, many cases, we try to weigh those things when the other things don't tell us the answer. And I would guess I don't really see the big problem that people who are putting up speech even that Texas considers offensive, in part for reasons that Justice Scalia says. Put up a bumper sticker. What's the problem? Well, the culture of creating specialty plates began in Texas in 1965. We've been doing this, and we have gone bonkers with the people buying these things in the State. There are 50,000 people with the private plates. It's a lot of money to do this, isn't it? It's about $8,000? Say what? Is it about $8,000 to get one of these plates? I think it's a little more than that. More than that? I have a different question, which is I actually do think that this is hybrid speech. It's both government and the individual speaking at the same time. But that goes back to what Justice Scalia said. In Rooley, we said we can't compel the individual to put something on their license plates that they disagree with. That's – we have that case. So why isn't the reverse true for the government? And if you're going to ask me to put my name, because the law requires it, the State's name on a license plate, why can't you compel us to do something we don't want to endorse? Well, the reason is that this has become – and it's the numbers – it's become a limited public forum for putting up messages. But how do I know which is the government's and which is only the individual's? I mean, I wouldn't have known that pro – that pro anything was sponsored by some States, but not others. So how do I know that a particular license plate the government doesn't endorse? You can't tell whether government wants your speech in advance in this program. You have to submit what you think you want. And then the – Well, that implies a certain degree of approval. And the – well, of course there is approval. It's just like there's approval for someone to speak in a park. The – in the Columbus, Ohio case where they – But that's – that's, I think, was brought out earlier. You can have time, place, and manner regulations for speaking in the park. You can't have content-based regulation. This is – this is a content-based. It's content the State doesn't want. And they have – they have a standard that is the lowest common denominator. If any person could be offended, they can deny it. That is their standard, which in fact is – It wasn't quite that. It says it would be offensive to many people. No, ma'am. I think the statute is – says actually any person. So – Well, of course, Mr. George. If you had a standard like that in a case, in a normal case where we were regulating private speech, of course we would find that impermissible. But the question is whether this is a very different kind of context. And let's go back to – I think Justice Scalia said it about the nature of license plates. I mean, I think there's a clear regulatory purpose here. It's the government that actually makes the license plate. I think the license plate continues to be public property, if that's right. Like, you have to return the license plate. It has the State's name on it. It's clearly the official identification that the State gives with respect to a car. So why doesn't all of that make – make this a very different case from the typical forum cases that – that we usually address? Well, the reason is that we do have hybrid speech. And they opened up and they created this billboard, as Justice Alito said. They created a billboard opportunity. And they have – since they can make everybody have a license plate, they said we're going to create a billboard opportunity and put messages – let you put messages on it and pay us money for using our billboard. That's what they've done. And then they say to some people, but if I don't like your message because you're a Republican or you're a Democrat or you are – you want to say Mighty Fine Burgers instead of Whopper Burger, they can do that. That sort of arbitrary control of speech based upon a standard that it might offend anybody is they either need to get rid of the program or they need to open up the program to everybody else. And if somebody publishes a speech they don't like, Justice O'Connor in the Columbus, Ohio case suggested you just make them put a number under it when the Ku Klux Klan put the cross on the hill in Columbus, Ohio. Can you – I'd like – I asked my question before, if you remember it, really because I wanted an answer. It wasn't the same idea. It was – it was a – I'm trying to get rid of all the conceptual bases here. You just go back, forget the public forum, et cetera. Forget all that. Just go back to look to see, is speech being hurt? And the answer is, of course, yes, but not much because they can put a bumper sticker. And you look at the other side of it and you say, does the State have legitimate interest here? And the State says yes. Our interest is that there are messages we like, messages we don't care about, and messages we don't like. And we have a system for keeping the last off because it is the government speaking which represents the citizens, and the citizens do – it's their government and they don't want, just as in the examples Justice Scalia gave, to have their government associated with messages that this commission doesn't want. And maybe there are limits on that, but that's the basic idea. Okay? Now, weigh those two things, I think you'd say, little harm to speech, we see the other, blah, da, da, da, et cetera. Now, what's your response? Well, the response is the forum has been created. The forum. See, it's the conceptual part. I can't tell whether a forum, a license plate's a forum or not a forum, or if it's a three-part test or whatever. I can't get that. I'm trying to go back to the basics of it. Well, one of the – one of the ideas that you have articulated and others on this Court is that what would the reasonable observer believe this was? For example, the – would they believe that the speech is the State's speech, or would they believe it's the person who bought the plate, because there's no – nothing gets communicated. How about both? How about both in answer to that? It is the State's license plate. It has Texas on it in big letters. So, and Texas says, yes, we have to approve it. Yes, we approve a lot, but there's some we don't approve because it's our speech. It may be the coroner's speech as well, but it is our speech. Both – the State has dozens of potential designs for plates that don't carry anybody else's message, and they have 480 designs for organizational notices and 50,000 personalized messages. And the issue in this case is the person who puts the license plates on their car is the one that communicates the message. The other people are just giving approval. Suppose the State had many fewer plates from which to choose. So let's say they have the standard plate, and then they have a plate for every college or university in the State. That's your choice. Would that be government speech? It certainly is government speech in the sense that, and partly from government speech, the ability to choose some government universities in the State, and if the standard by which they issue those is that we're going to put one for all the colleges in the State and that is the standard, of course that's okay, because it is a standard that has – they chose, or the legislature chose, and I suspect, that says you can have – everybody who has a college can get in this program. Alito, so it's not only all the colleges and universities, but it's all the places in Texas of historic interest or natural features of the State. Now, you've got a lot more. They actually do those, and those are not sponsored by anybody. Those are State-created for, and they charge more money from us than for the State. But answer the hypothetical. Justice Alito says first colleges, next scenic places. That's okay or not? Okay, then I'm sure he has the money.  Alito, and suppose that there's some little town that thinks that it's really scenic and there's a way in which they can petition to get on this list. You see where I'm going. At some point, if it's – if you have just a standard State plate, of course that's government speech. If you've got 5,000 different variations that people can create for themselves, it becomes a lot harder to say that's government speech. So where would you draw the line? My view is that when the people get to create a message themselves and then – an organization in this case – create the message for themselves, and then the people who look in the catalog pick out the license plate that they want and put it on their car, then the speech is the speech of the person who communicated it. My problem with this is, how do I know? There are three categories of plates I understand. There's the official State plate, there are specialty plates created by the legislature, and there are specialty plates created by an individual. How do I tell the difference between the legislative plates, which are government speech, and the private plates? Do I need to? What I do know is what I said at the beginning. It's both people speaking and, I think, both people endorsing each other's message in some way. So why should the government be compelled to accept speech it rejects because it thinks it's wrong? In the first place – And doesn't want to be associated with directly. I understand. In the first place, the way people pick out plates, there's a big long catalog with 400 different organizational plates, 480 now, it grows every day of organizational plates, and people pick them out of the – out of a catalog, out of a website, and they pick the one they want to pick, and then they put it on their license plate. The communication of the information on the license plates actually is controlled entirely by the people who pick the plates. Justice Alito's hypothetical, we never did quite finish, where the direction of his questioning was suppose the State all by itself has 10 messages, 20 messages, 200 messages, 2,000 messages, and you can choose. But the State makes up all the messages and gives you all the choices. What result? Well, the result is if the State has all – controls all – has all the messages and picks all the messages, and then the people from whom it picks – who it sells the plates to pick the one. I know that's the result of the hypothetical. I want to know the legal result. What's the First Amendment answer? Well, the State can design all kinds of license plates that it wants to choose. Is the scheme that I proposed and that followed from Justice Alito's questions consistent with the First Amendment or not? It's not First – when the individual submits – when people, other people submit the design. That's not the hypothetical. I understand that. The hypothetical is the State has 5,000 designs and the State makes them all up, and you can choose. Is there a First Amendment violation? I don't believe if the State does everything, then it's the creator of the message and the speaker is the driver. What happens if private people could submit messages, but they all had to go through the legislature? My view is that it is a much more difficult case for us if the legislature passes a statute, because that is a legislative act and a clear act of the State. Well, what's the difference then? I mean, if you think that that would be all right, you know, Texas has said, well, the DMV does it, not the legislature, a different branch of government, but it's the government just the same. I understand that. And the issue is whether or not the – in the cases, we have court of appeals cases that don't distinguish between legislative action and non-legislative actions and those that do. It is my judgment that the State has a greater claim making its speech when every – when the legislature passes the bill and the governor signs it, then the statute is clearly an explanation or expression of the State. Well, if you regard when anybody buys a license plate. Breyer. In Willie, go back to that for a second. I take it that if I object to the message on the New Hampshire plate, live free or die, I have a right to be disassociated with that? Yes. Okay. Well, if the State, which represents many people in Texas, doesn't want to be associated with the particular message, why doesn't it have the right to say, we don't want that on that? We don't want that association. McCulley, the State represents X million people. They don't want to be associated with this message through their official organ. I understand quite firmly. What's the difference? The difference is they invite people to make their – they charge people and have them pay for the manufacture of the license plates by giving them the chance to design a message. That's what they do. They – the cost – the people who come up with these things, they pay all the front-end costs, put up $8,000 collateral before any license plate is built, and it is a money-making scheme that they use. The fact that they choose to, apparently twice in history, and there may be more, but we can't document it anymore, they've never turned anybody down. This is not a form which people actually – they make any decision besides an economic decision. It's a factual matter. That's what happens. Counsel, could I ask you – it's a somewhat technical question, but you just touched on it. Do you have an objection to the materials that your friend has cited from outside the record? To the extent he's cited issues relating to the other design, I do not have an objection to that because I think it's not a matter of fact. You think it's the extra record materials are accurate? I think it's almost certainly accurate from what we've found since we filed our brief. And the fact that we have gone from 350 to 480 organizational designs since the case was tried, I was not in the record either, but I don't doubt that he has sold a lot more organizational plates since then, and they keep a better tally than we do. So what is your – the choice, the choice that Texas had, am I right that in your case, they have to get the plates, it has to be open to everybody, or they can shut the program down and nobody gets vanity plates, but maybe if the legislature passes a law or a law saying this plate is okay, that might be okay. Is the choice between everything or nothing, with the exception of what the legislature does, is okay? I believe that the best analysis is the legislature or the Motor Vehicle Commission discriminates against people's speech on the basis of the content of the speech that is subject to serious First Amendment concerns and is probably illegal, although there may be some exceptions to that. That's what I think the better rule is. But we have conflicts in circuits about that and we have not – this Court has not addressed that. It's not this case, but I believe it is an issue. Kagan. Kagan. Mr. George, could I just take you back to the Chief Justice's question for a moment and just make sure I understand it. Mr. Keller has indicated that there are a number of other occasions on which the State has disapproved plates and in which the State has done that on the grounds of offense. Do you – do you have any objections to those representations? To the extent that they were done on the grounds of offense, I do, because he has one that I can – that we have verified, and that one is that there was a concern about a danger on the driver's thinking that somebody's State trooper plate may name them a State trooper. That's what he said, at least. Roberts. Roberts. What if the argument were not simply offensive, but a higher degree, you know, incitement or likely to give rise to – I mean, I think someone driving in Texas with a swastika is, you know, is likely to be – to trigger public violence. Is the level of the State's interest at all pertinent to your position? Well, the – this Court's law on incitement, going back to Brandenburg v. Ohio and the Klu Klux Klan rally that this Court decided was not incitement, is pretty thin at this point in our history, because I don't know what the rule of incitement would be today. No, but Mr. George, just the worst of the worst, whether it's the swastika or whether it's the most offensive racial epithet that you can imagine, and if that were on a license plate, where it really is provoking violence of some kind, you know, you're going – somebody's going to ram into that car. I just don't – I don't think people can – the government can discriminate on content. They can put on the license plates they disagree with, this is not the State's job, and disclaim that speech. Where's that going to fit on the license plate? Huh? Where's that going to fit on the license plate? They – but those – that's – you can put – we have taxation for that representation on the District of Columbia's license plate, and that's a political message. They can put the message. Your position is that if you prevail, a license plate can have a racial slur. That's your position. Yes. I don't think there's any consistent position otherwise, although the State can disclaim it undoubtedly on the same license plate. Do you have to put taxation without representation on your D.C. plate? That's my understanding. Or can you ask for a clean plate? I haven't – well, I'm not living here, but I have – I believe it is required. If somebody objects, I guess it's like live free or die, right? They can put it – put it – take it over. But you can put, obviously, the disclaimer idea. Justice O'Connor came up with that in her concurrence in the Columbus, Ohio Ku Klux Klan cross on the Hill case, and I thought that was a pretty good idea. That is that we have a disclaimer when you don't like the speech and you don't believe it's appropriate. The State can do that, and I think that's largely part of the answers. This is not – certainly not purely governmental speech because the action of the State is only approval. As to the Pleasant Grove City, Utah case, monuments are, in fact, unique circumstances. This Court had decided Perry – Dorton v. Perry some years ago involving – and Justice Breyer put a map of the State Capitol grounds with all the monuments in it. Those monuments – and when that case was decided, it had been there over 100 years, and the monument in question had been there 45 years. Monuments are different than any kind of speech in a park because of the nature of the creation. You couldn't – you'd have blasts and commons with monuments every 7 feet, which is you can't do that. And that case turns on those facts, and I believe it is absolutely correctly decided. I'm also convinced that the Jonas v. Celestak marking board is correctly decided because it started with a – with a statute passed by Congress telling the Department of Agriculture to do something, write marketing material, have it submitted back to the Secretary of Agriculture, let him approve it, then go market it and levy a tax on imported beef to support it. That's all government speech. Do you know how much money Texas makes from this? I don't have that in the – there's not a line item in the budget, but lots. That's really all this is about, isn't it? Yes. That's why Texas is in the business. And so people get to play and do business with them that they like what they're saying and they don't get to do business with them they don't like what they're saying. Thank you, counsel. Mr. Keller, you have three minutes remaining. You have very limited rebuttal time, and I do have one question. You were asked a question about the Republican-Democrat distinction. You said, oh, there might be some other thing you could do. Is there a First Amendment standard that you can use to deny that play? I believe it would be government speech and, therefore, there would not be a First Amendment problem, but I believe it would not be allowed because other constitutional bars would apply. No First Amendment? Just as if a monument were put up in a public park on partisan or candidate speech, it would be the government speaking. However, it would not be allowed under other constitutional provisions. Justice Alito and Justice Kagan, if I can suggest a way to avoid the billboard problem, when the government has its name on the speech and when it is part of a regulatory process or a program of the government's and there's formal notice and comment and there's a public vote and there's no abridgment of traditional free speech rights, which is this case, I think that's government speech. Justice Breyer, to address some of the other interests that Texas has here, Texas wants to prevent offensiveness in vulgar speech. It wants to prevent confusion, misrepresentation, promote safety. It wants to celebrate the diverse interests that the State has. Justice Sotomayor, you're absolutely right that even if this is hybrid speech and it does take two to tango in this situation, you need both the motorist and the State propagating the message that that is still government speech. All of this Court's cases on government speech have been in that posture. For one clarificatory matter, all of our sites in our reply brief and our opening brief to Title 43 of the Texas Administrative Code, those have been renumbered since the filing of our reply brief, but the substance is all the same. And at base, this is not just about Texas making money, although Texas does make money. This is about the State of Texas not wanting to place its stamp of approval on certain messages, and a speaker is not entitled to the imprimatur of the State of Texas on whatever message that it wishes to put on a license plate. Thank you, Mr. Chief Justice. Thank you, counsel. The case is submitted.